IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**LESA MAXINE ROBBERTS,**

    **Plaintiff,**

                                                                          Civil Action 2:18-cv-00541
    v.                                                            Chief Magistrate Judge Elizabeth P. Deavers


**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


## OPINION AND ORDER

Plaintiff, Lesa Maxine Robberts ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF No. 10). For the following reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff applied for disability benefits and supplemental security income in November 2014. (R. at 230-40.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 11.) Upon request, a hearing was held on March 29, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 56–92.) A vocational expert also appeared and testified at the

hearing. (*Id.*) On July 18, 2017, Administrative Law Judge Jeffrey Hartranft ("the ALJ") issued a decision finding that Plaintiff was not disabled at any time after January 15, 2014, the alleged onset date. (R. at 11–32.) On April 5, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–4.) Plaintiff then timely commenced the instant action. (ECF No. 5.)

## II. RELEVANT HEARING TESTIMONY[1]

Lynne Kaufman testified as the vocational expert ("VE") at the March 2017 hearing. (R. at 82–92.) Plaintiff's attorney stipulated to the VE's qualifications. (R. at 82–83.) The VE described Plaintiff's past work as a phlebotomist under the Dictionary of Occupational Titles ("DOT") code 079.364-022. (R. at 83.) She testified that it is considered a light job and semi-skilled with a specific vocational preparation of three (3). (*Id.*) The VE further testified that Plaintiff had one job where she had to lift patients, which the VE estimated to be "heavy to very heavy." (R. at 83–84.) The VE testified that Plaintiff described another job at the blood bank which would be heavy and semi-skilled, specific vocational preparation of four (4), DOT 022.387-058, in the medium strength range. (R. at 84.) As to Plaintiff's past work as an inspector/packer, the VE testified the DOT considers that as a light job and unskilled, specific vocational preparation of two (2), under DOT code 559.687-074. (*Id.*)

The VE testified that for Plaintiff's work as a stock clerk the job would be considered heavy strength, semi-skilled, specific vocational preparation of four (4), DOT code 299.367-014, but estimated Plaintiff's performance as light. (*Id.*) The VE indicated that Plaintiff worked as a warehouse worker, which would be "under laborer, stores" and is considered a medium strength

---

[1] Given Plaintiff's single contention of error that the ALJ erred in relying on the VE's testimony to fulfill his Step 5 burden without fully addressing Plaintiff's post-hearing objections to the testimony, only the VE's testimony from the hearing is relevant to the Court's analysis.

job and unskilled, specific vocational preparation of two (2), DOT code 922.687-058. (R. at 84–85.) The VE also indicated that Plaintiff did a lot of temp jobs in that category including one that would be categorized under "clerk, typist," which is a sedentary job, semi-skilled, specific vocational preparation of four (4), DOT code 214.382-014. (R. at 85.)

The ALJ asked the VE to assume Plaintiff is capable of working at the light exertional level, that she could frequently climb ramps and stairs, could occasionally climb ladders, ropes, or scaffolds, would be capable of frequent stooping, kneeling, crouching, and crawling, would need to avoid workplace hazards such as uncontrolled heights and machinery, would be capable of simple, routine, and repetitive tasks involving only simple work-related decisions and few if any workplace changes, and would be capable of occasional interaction with the general public, coworkers, and supervisors. (*Id.*) Assuming those limitations, the VE testified that Plaintiff could perform her past work of "inspector, packer" but not the other jobs, which would be semi-skilled, because of the simple, repetitive limitation. (*Id.*)

The ALJ asked the VE to assume a hypothetical individual with Plaintiff's educational and vocational background, along with the previously described restrictions. (R. at 85–86.) Assuming those limitations, the VE testified the individual could perform work in light packing jobs, for example DOT code 920.687-166, which she estimated had about 8,000 options in Ohio and about 175,000 options nationally. (R. at 86.) The VE also testified that the individual could perform work in some sorting positions, for example DOT code 222.687-014, which she estimated had about 6,000 options in Ohio and about 120,000 options nationally. (*Id.*) The VE further testified that the individual could perform work in some marker jobs, for example DOT code 209.587-034, which she estimated had about 4,000 options in Ohio and about 90,000 options nationally. (*Id.*)

3

The ALJ then asked the VE to add the limitation that the hypothetical could work in positions that do not require strict production quotas or fast-paced work such as on an assembly line. (*Id.*) The VE testified that with that limitation Plaintiff's past work would be eliminated. (*Id.*) She further testified that as far as the other jobs, she would give about a 25% reduction on the numbers for this restriction. (*Id.*) The ALJ then asked the VE to assume, for either of the first two hypotheticals, that the hypothetical individual would need to be able to use a cane for prolonged ambulation but could carry up to the exertional levels in the hand not using the cane. (R. at 86–87.) The VE testified that with this restriction she would put Plaintiff in a more sedentary strength range, and examples of sedentary jobs that she could perform would be some inspector positions such as DOT code 726.684-110, which she estimated would have about 2,500 options in Ohio and about 25,000 options nationally. (R. at 87.) The VE also testified that there would be some table worker positions available to Plaintiff, for example DOT code 739.687-182, which she estimated had about 2,000 options in Ohio and about 35,000 options nationally. (*Id.*) Furthermore, the VE testified that Plaintiff could look at some assembler work, such as DOT code 713.687-018, which she estimated had about 2,500 options in Ohio and about 60,000 options nationally. (*Id.*)

The ALJ then added to any of the previous hypotheticals the limitation that because of pain, anxiety, side effects of medication, or any other reason, the hypothetical individual would be off-task 10% of the workday in addition to the normal breaks on an ongoing basis. (*Id.*) The VE testified that this limitation, in combination with the other restrictions, would be work preclusive. (R. at 88.) The ALJ then added to the first three hypotheticals the restriction that the individual's supervisor or lead worker would need to check every hour to see if the individual was properly performing their job and on-task. (*Id.*) The VE testified that this restriction "really

exceeds customary tolerances in the sense of close supervision, so [she did not] think it's really reflective of competitive work." (*Id.*) Regarding the tolerance for absenteeism in unskilled work, the VE testified that she uses the standard of not more than one day per month if ongoing or repetitive, and anything in excess would be work preclusive. (*Id.*)

Plaintiff's counsel asked the VE if frequent redirection would be considered the same thing as checking in every hour. (*Id.*) The VE testified that "it could be included as part of that[.]" (*Id.*) Plaintiff's counsel then asked the VE if a requirement of frequent redirection would be prohibitive of work to which VE responded that "I think that's again not reflective of competitive. It's more like a supported employment or you know situation." (R. at 89.) Plaintiff's counsel asked the VE if a restriction was added to any of the hypotheticals that the individual would be unable to carry out detailed written and oral instructions, would the restriction preclude the individual from work or change any of the potential positions. (*Id.*) The VE testified that she "would tend to put the ability to handle detailed written or oral instructions at least in a more semi-skilled rather than unskilled" and that "once it gets to detailed then I think you know you're moving to a more skilled job." (*Id.*)

The VE testified that she reviewed the "E exhibits" in preparing for her testimony, that her job numbers were current job numbers, and that she considered Plaintiff's testimony in identifying the past work. (R. at 89–90.) The VE further testified that in drawing conclusions for making adjustments for the reduced numbers of jobs available she used a variety of resources, including information from the US Department of Labor Bureau of Labor Statistics Occupational Outlook Handbook, her own research on all the Ohio labor market information, and SkillTRAN. (R. at 90.) The VE also testified that she believed her testimony was consistent

with the DOT but there were several issues not addressed in the DOT so she looked to other resources to develop an answer. (R. at 90–91.)

### III. RELEVANT RECORD EVIDENCE

On April 12, 2017, prior to the ALJ's administrative decision, Plaintiff submitted a Post-Hearing Memorandum of Law and Objections to the Vocational Witness' Testimony and supporting exhibits to the ALJ. (R. at 324–84.) In the memorandum, Plaintiff asserts that "a number of inconsistencies arose during the vocational testimony, and must be resolved pursuant to SSR 00-4p." (R. at 324.) Plaintiff indicated several objections:

> We object: to any purported expert testimony from Ms. Kaufman regarding job incidence in the local, regional or national economy as the record in this matter on its face fails to show any qualifications through training, education or experience that would establish the necessary expertise to give opinions on the number of jobs that exist in the local, regional or national economy.
>
> We object: to the vocational witness' testimony regarding job incidence in that said testimony is unfounded, unsupported, unreliable and conjured from whole cloth.
>
> . . .
>
> We object: to the vocational witness' testimony as the jobs offered at hearing are no longer performed at the unskilled level pursuant to current labor market data.
>
> . . .
>
> We object: to the positions offered by the vocational witness in response to the hypothetical residual functional capacity assessment, as this opinion is not reliable and is not supported by substantial evidence because current labor market research and reliable sources of job information dictate that these positions would require more than occasional interaction with coworkers and supervisors.
>
> . . .
>
> We object: to the vocational testimony that the jobs of Table Worker (DOT: 739.687-182) and Final Assembler (DOT: 713.687-018) could be performed within the hypothetical residual functional capacity assessment.
>
> . . .

> We object: to an unfavorable decision being issued in the instant matter prior to affording the claimant the opportunity to address the aforementioned evidentiary and vocational inconsistencies at a supplemental hearing. (See HALLEX I-2-6-56).

(R. at 324, 329–31.)

## IV. ADMINISTRATIVE DECISION

On July 18, 2017, the ALJ issued his decision. (R. at 11–32.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2014, the alleged onset date. (R. at 17.) The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the spine; coronary artery disease ("CAD"); a depressive disorder; an anxiety disorder; and a history of substance abuse. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. [Plaintiff] could frequently stoop, kneel, crouch, and crawl. She should avoid workplace hazards, such as unprotected heights and machinery. [Plaintiff] would be capable of performing simple, routine, repetitive tasks, involving only simple work related decisions, and with few, if any workplace changes. She could have occasional interaction with the general public, coworkers, and supervisors. Further, [Plaintiff] could work in a setting without strict production quotas, such as on an assembly line.

(R. at 19.)

The ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 30.) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 31.) He therefore concluded that Plaintiff was not disabled under the Social Security Act from January 15, 2014, through the date of the administrative decision. (R. at 32.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff asserts one contention of error. Plaintiff contends that the ALJ erred in relying on vocational expert testimony to fulfill his Step 5 burden without fully addressing the objections to the vocational expert's testimony. (ECF No. 15, at pg. 1.) Specifically, Plaintiff focuses on two objections that she asserts the ALJ failed to properly address: "(1) the ALJ's stated limitations (in the hypothetical assumption and in his ultimate RFC finding) that Plaintiff can occasionally interact with supervisors and coworkers is work preclusive, and (2) that up-to-date and reliable (and administratively noticed) vocational sources demonstrate that the jobs identified by the vocational expert, while correctly described as unskilled jobs in the DOT, which was last updated over 30 years ago are no longer unskilled jobs." (*Id.* at pg. 4.)

The ALJ made the following findings regarding Plaintiff's post-hearing memorandum and objections:

> The undersigned, at hearing, at the request of the claimant's attorney, held the record open for 2 weeks for additional post hearing evidence and discussion. The undersigned read and considered the post hearing brief evidenced at Exhibit B14E. Within the brief, the attorney objected to the testimony from the vocational expert regarding job incidence in the local, regional, or national economy; objects to the vocational testimony of the job incidence, as she alleges the expert's testimony is unfounded, unreliable, and unsupported; objects to the testimony as to the jobs offered at hearing, reporting they are no longer performed at the level assessed; objects to the positions offered by the vocational expert in response to the hypothetical residual functional capacity assessment; objects to the notion that the jobs of Table Worker and Final Assembler could be performed within the assessed hypothetical; and objects to an unfavorable decision. Here, for the reasons discussed below the undersigned overrules the objections contained in the brief.
>
> First, despite the arguments made within this post-hearing documents, it should be noted, the attorney, on the record at the claimant's hearing, stipulated to Ms. Kaufman's qualifications. The attorney found no reason to assert Ms. Kaufman was not qualified as a vocational expert. Secondly, the undersigned finds the attorney's posed argument is unfounded as Ms. Kaufman is a certified rehabilitation counselor (CRC); professional counselor (PC); and a certified case manager (CCM) (Exhibit B11E). Further, Ms. Kaufman has experienced [sic] as a qualified rehabilitation provider for the Bureau of Worker's Compensation and was a certified rehabilitation counselor for the Department of Labor (Exhibit B11E). Additionally, she has further experience as a fellow on the American Board of Vocational Experts, as well as prior experience as a vocational and fund evaluator for permanent and total disability and disability for the Ohio Police and Fire (Exhibit B11E). She has an undergraduate degree from the Queens College, City University, as well as a Master's degree in counseling (Exhibit B11E). Further, she completed 90 credit hours and residency toward a Ph.D. in Rehabilitation Counseling at the Ohio State University (Exhibit B11E). Ms. Kaufman has significant and relevant vocational experience working as a Vocational Rehabilitation Counselor; Industrial Rehabilitation Consultant; and a Job Placement Specialist since 1979 (Exhibit B11E).
>
> The brief contained discussion of the use of SkillTran. Regarding such discussion, the undersigned finds the Social Security Regulations do not provide an exhaustive list of vocational references. Each vocational references [sic] provided in the list of administrative notice of job data is merely an example. Precedent supports an Administrative Law Judge (ALJ) can rely on evidence such as the testimony of a vocational expert and the Dictionary of Occupational Titles. The ALJ is not confined to using one sole publication or method and Social Security rules and regulations support [that an] ALJ may take administrative notice of reliable job

information available from various governmental publications such as the DOT, published by the Department of Labor. 20 CFR 404.1566(d). Further, valid legal precedent contends the ALJ may use the services of a vocational expert to assist in determining whether a claimant's work skills can be used in other work, and, if so, the specific occupations in which they can be used. 20 CFR 404.1455(e); *Beinlich*, 345 Fed. Appx. At 168. Here, the undersigned has chosen to justly ascertain reliable vocational information from more than one source; however, he relies heavily upon the vocational expert's hearing testimony. The undersigned's actions are not in conflict with Social Security rules and regulations or current legal precedent.

In terms of the arguments regarding the provided job numbers[, the] undersigned finds the provided numbers are accepted. As found by the United States Sixth Circuit Court of Appeals, "[t]his court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an [Administrative Law Judge's] finding at step 5 that the claimant can perform other work." (*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir. 2004) citing *Wright v. Comm'r Soc. Sec.,* 321 F.3d 611, 616 (6th Cir. 2003); *Sias v. Sec'y of Health & Human Servs.,* 861 F.2d 475, 481 (6th Cir. 1988)). Furthermore, the undersigned can rely on evidence including the testimony of the vocational expert and the DOT as "[t]he [Administrative Law Judge] takes administrative notice of reliable job information available from various governmental publications such as the DOT, published by the Department of Labor." (*Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 855(6th Cir. 2010) citing 20 C.F.R. § 404.l566(d); *Beinlich v. Comm'r of Soc Sec.,* No. 08-4500, 2009 WL 2877930, at *4, 345 Fed. Appx. 163, 168 (6th Cir. 2009, unpublished)). In light of these holdings, the representative's arguments are without legal merit. Here, the vocational expert's testimony is based not only on the information contained in the DOT, but also her vocational rehabilitation education and years of professional experience. Therefore, in light of the assessed residual functional capacity, the undersigned accepts the vocational expert's testimony and finds that there is substantial evidence to support that there are jobs existing in the national economy of significant numbers that the claimant could perform.

On the record, at hearing, the claimant's attorney cross-examined the vocational expert and thus had the opportunity to obtain more detail or clarification about the vocational positions. It was expected the attorney was going to have preconceived objection to the vocational expert testimony, as the representative noted in the *prehearing* brief that they wanted to keep the record open for vocational objections for 30 days after the hearing. There is reason to assume, the attorney had obtained all of the factual information she used in her written post-hearing arguments at the time of the hearing. In fact, the submission of the post hearing brief, appears to be correlated/associated with other formal appeals, as specific Exhibits A-G were formally presented. The attorney objected to job numbers; however, points of contention such as the invalidity of the job numbers were never raised on the record

11

at hearing. By not making or raising the arguments on the record at hearing, the undersigned finds the attorney waived the right to make any farther argument regarding the vocational expert's testimony. This conclusion is supported by the Sixth Circuit's explanation in *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163 (6th Cir. 2009), holding "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.* at 168-69. Here, despite cross-examining the vocational expert, the attorney never questioned the expert's proposed job numbers, use of Skilltran, or referenced any inconsistency in job number findings. However, even if an inconsistency did exist between plaintiff's residual functional capacity and the occupational requirements of the positions identified by the vocational expert, the Sixth Circuit, in the *Lindsley* decision makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (holding that the ALJ fulfilled his duties when he asked the vocational expert whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict); *see also Beinlich*, 345 Fed. Appx. At 168-69 ("Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision."). Here, the ALJ specifically inquired at 12:05:04 PM on the date of the hearing, per the hearing transcript whether the expert's testimony was consistent with the DOT. The expert clearly responded in part her testimony was consistent with the DOT, but indicated where conflict existed, she looked to other resources and her experience to develop her provided answers. It should he noted such process is consistent with SSR 00-4p.

In summary, the ALJ specifically allowed the claimant's attorney to cross examine the vocational expert. It appears, considering both the pre and post hearing briefs together, that the attorney had the post hearing objection materials at her disposal at the time of the hearing and made a personal choice, opting not to discuss them on the record. Thus, she failed to satisfy her requirements under the regulations. Further, considering both the pre and post hearing briefs, it appears the attorney was prepared to raise her objections on the record, as she expected such vocational issues, [at] the hearing onset (Exhibit B12E). The undersigned finds the arguments outlined and alleged by the attorney at Exhibit B14E unpersuasive and affords them little weight. Further, it should be noted the undersigned finds the post-hearing documents were submitted in an attempt to circumvent the established legal processes and procedures and the undersigned's findings are supported by relevant Sixth Circuit precedent.

(R. at 12–14.)

Plaintiff argues that the ALJ failed to address some of her objections and invokes a provision of the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") in support of her argument. (ECF No. 15, at pg. 11–12.) This argument fails on multiple levels. The ALJ addressed and "overruled" Plaintiff's post-hearing objections. (R. at 12–14.) Importantly, "HALLEX is an internal guidance tool" that does not have the force of law. *Keehl v. Comm'r of Soc. Sec.*, No. 1:18-cv-281, 2018 WL 4352155, at *3 (W.D. Mich. Sept. 12, 2018) (citing *Estep v. Astrue*, No. 2:11-cv-17, 2013 WL 212643, at *11 (M.D. Tenn. Jan. 18, 2013). Indeed, "HALLEX does not impose judicially enforceable duties on either the ALJ or this [C]ourt." *Morris v. Comm'r of Soc. Sec.*, No. 1:11-cv-154, 2012 WL 4953118, at *12 (W.D. Mich. Oct. 17, 2012); *see also Smith v. Comm'r of Soc. Sec.*, No. 17-12056, 2018 WL 3750971, at *13 (E.D. Mich. July 16, 2018) ("[T]he failure to comply with HALLEX, by itself, does not provide grounds for remand by a reviewing court.").

Moreover, Plaintiff has not shown that the ALJ violated a legal obligation set out by HALLEX, which, Plaintiff contends, "embodies the principle of procedural due process found in the Constitution and the Administrative Procedure Act." (ECF No. 15, at pg. 12 n .7.) This Court has previously addressed the same argument in another case:

> Plaintiff points to HALLEX § I-2-6-74(B) which provides that at the hearing the ALJ must ask the claimant's representative if she has any objections to the VE's testimony and if so, must rule on any objections either "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX § I-2-6-74(B). In this case, Plaintiff did not raise the objections to the VE's testimony until after the hearing. As such, this HALLEX provision does not apply. Because Plaintiff did not raise the objections at the hearing and because the ALJ specifically addressed her post-hearing objections in the body of her written decision, Plaintiff has not shown that the ALJ violated any obligations established by HALLEX. *See Horner v. Berryhill*, No. 17 C 4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20 2018) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed after a hearing has ended, the ALJ's failure to do so in this case was not erroneous."); *Owens v. Berryhill*, 17-cv-4824, 2018 WL 3303274, at *2 (N.D. Ill. July 5, 2018) ("Here [plaintiff] did not

13

raise the relevant objections to the VE's testimony until after the hearing, so the cited HALLEX provision does not apply."); *Rockholt v. Berryhill*, 2018 WL 4462231, at *7 (W.D. Okla., 2018) (collecting cases).

*Jones v. Comm'r of Soc. Sec.*, No. 2:17-cv-1062, 2019 WL 2511111, at *8 (S.D. Ohio June 18, 2019).

In her first objection, Plaintiff maintains that the ALJ's stated limitations that Plaintiff can only occasionally interact with supervisors and coworkers is work preclusive. (ECF No. 15, at pg. 4.) Regarding this objection, which Plaintiff asserts the ALJ did not address, the Court notes that this is not the first time a plaintiff has lodged the argument that an ALJ failed to address a report from Paula Santagati which he or she had included in a post-hearing memorandum. Just as other courts have noted about the plaintiffs in their cases, Plaintiff in the instant matter failed to cross-examine the VE regarding Ms. Santagati's opinions. *Keehl*, 2018 WL 4352155 at *4 (citing *Kidd v. Berryhill*, No. 5:17-cv-420, 2018 WL 3040894, at *4 (E.D. Ky. June 19, 2018) (Plaintiff "could have extensively cross-examined [the VE] on the topic [s]he now raises, but [s]he did not."). Additionally, ALJs have no duty to convene a second hearing to question a VE that the plaintiff could have raised initially. *Kidd*, 2018 WL 3040894 at *4. The Court finds the *Keehl* and *Kidd* decisions persuasive and instructive as to many of the issues raised by Plaintiff here.

As the *Keehl* court points out "courts have been less than impressed with Ms. Santagati's opinions[.]" 2018 WL 4352155, at *4. Indeed, "[s]everal courts have received reports from Santagati containing identical testimony regarding work-preclusive social limitations, and have rejected the testimony for its lack of specificity, expertise and knowledge of the case in question." *Looney v. Berryhill*, No. 3:17-cv-450, 2018 WL 3826778, at *12 (E.D. Va. Aug. 10, 2018) (citing cases). The *Kidd* court explicitly found that "Santagati purports to offer her own

14

most generalized (and quite radical) 'vocational opinion' that, as of October 2015, 'a limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors. . . . Santagati said **utterly nothing** specific about [plaintiff's] life, health, ability to work, or case." 2018 WL 3040894 at *4 (emphasis in original).[3] The Court here agrees that Ms. Santagati's opinion is less than impressive and unsubstantiated. More importantly, the Court finds that Plaintiff waived this objection because she failed to use her opportunity to cross-examine the VE regarding Ms. Santagati's opinion during the hearing. *See Oneal v. Soc. Sec. Comm'r*, No. 4:17-cv-11380, 2018 WL 5532486, at *4 (E.D. Mich. 2018) (holding that "[p]laintiff's failure to object to the VE's testimony during the hearing waived her right to raise such issues in district court.") (citation omitted); *McKinney v. Astrue*, No. 11-293, 2012 WL 2603659, at *9 (E.D. Ky. July 5, 2012) (finding plaintiff waived his right to cross-exam the VE by failing to object to the VE's testimony or even attempt to cross-examine the VE on the issue) (citation omitted).

The *Kidd* court also addressed Plaintiff's second argument, that the ALJ failed "to address challenges based on up-to-date and reliable (and administratively noticed) vocational sources demonstrate that the jobs identified by the vocational expert, while correctly described as

---

[3] Other courts have also found Ms. Santagati's opinions extreme and unfounded. *See, e.g.*, *Rosado v. Berryhill*, NO. B-17-77, 2017 WL 7790109, at *9-10 (S.D. Tex. Dec. 4, 2017) ("Santagati identifies no factual basis beyond her own opinion as to why every single job in America requires more than occasional interaction with others. As previously noted, occasional means up to one-third of a workday. SSR 83-10, 1983 WL 31251, at *5. In Santagati's opinion, every single job that can possibly be imagined requires interaction with others for more than 2 hours and 40 minutes in an eight hour workday. Santagati's opinion is not sufficiently supported by any evidence. Furthermore, it does not specifically discuss the interactions that can be expected of a car rental delivery driver or road roller operator, the jobs actually identified by Johnson and cited by the ALJ.").

15

unskilled jobs in the DOT, which was last updated over 30 years ago are no longer unskilled

jobs." (ECF No. 15, at pg. 4); 2018 WL 3040894 at *6. As in the instant case, the plaintiff in

*Kidd* would have preferred that the ALJ rely on a particular website, O*NET. (ECF No. 15, at

pg. 4–5); *Kidd*, 2018 WL 3040894 at *6. Again, the Court notes that Plaintiff failed to raise this

issue at the hearing and has therefore waived it. *See Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-

1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) ("The Sixth Circuit, along with other

courts across the country, have generally recognized that a claimant's failure to object to

testimony offered by a vocational expert, at the time of the administrative proceeding, waives the

claimant's right to raise such issues in the district court.") (citations omitted). "The Sixth

Circuit, along with other courts across the county, have generally recognized that a claimant's

failure to object to testimony offered by a vocational expert, at the time of the administrative

proceeding, waives the claimant's right to raise such issues in the district court." *Kidd*, 2018 WL

3040894 at *6 (citations omitted). Both the Santagati report and O*NET existed at the time of

the hearing. Plaintiff could have presented her arguments regarding both and cross-examined the

VE on her theories at that time, but did not. *Id.* at *7 ("The Santagati report and the DOT each

existed at the time of the hearing, and [plaintiff] could have presented the theories.").

     Plaintiff cites to *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010) in support of

the proposition that "[n]umerous courts (including recently in this Circuit) have ruled, when

presented with the issue presented here, that an ALJ's failure to adequately address, or address at

all, objections/challenges to vocational testimony (variously, failure to address challenges based

on up-to-date and reliable job information, objections to non-administratively noticed sources for

job incidence data, and others) is error requiring remand because it undermines the ALJ's step 5

finding that there is other work the claimant can do, and effectively precludes meaningful judicial review." (ECF No. 15, at pg. 12.) The court in *Kidd* addressed the *Cunningham* case:

> The Court makes a few observations about *Cunningham*. First, *Cunningham* "did not hold," categorically, "that the DOT is an unreliable or out-of-date source." *Earls v. Comm'r of Soc. Sec.*, No. 09 CV 1465, 2011 WL 3652435, at *7 (S.D. Ohio Aug. 19, 2011). "Rather, the court [of appeals] acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice." *Id.* Indeed, post-*Cunningham*, the Sixth Circuit directly held (as stated and described above), in a published decision: "**To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT.**" *Kyle*, 609 F.3d at 855 (labeling the DOT an enduring source of "reliable job information") (emphasis added); *see also, e.g.*, *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 n.6 (S.D. Tex. 2013) (same, rejecting argument that the DOT is "'obsolete' and not reliable"); *Biestek*, 880 F.3d at 787 (relying on the DOT as an information source); *id.* at 789-90 (affirming when the VE "based her testimony on the" DOT). This is consistent with the Circuit's pre-*Cunningham* case law. *See, e.g., Lindsley*, 560 F.3d at 603. Accordingly, to the extent *Cunningham* could be read to imply blanket disapproval of the DOT, *Lindsley*'s unanimous, prior, published guidance, as well as *Kyle*'s unanimous, subsequent, published direction, clearly trump.
>
> Second, despite "the Department of Labor's adoption of O*NET, the Social Security Administration still relies on the DOT and only requires the vocational expert's testimony to be consistent with the DOT. *See* SSR 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."); ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.")." *Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL 5530210, at *5 n.4 (S.D. Ohio Sept. 21, 2015); *see also, e.g.*, *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018) (Souter, J.) (noting that, despite some criticisms of DOT obsolescence, the SSA "continues to treat the DOT as" reliable). ALJ Kittinger made the same point in her written decision. R. at 21. *Cunningham*, further, did not "decide or even consider whether the vocational expert was precluded from using the DOT to determine the skill level required to perform a certain occupation." *Daniel*, 2015 WL 5530210, at *5 n.4. Instead, *Cunningham* only addressed using VE testimony (and, thus, DOT v. O*NET information) "to determine **the number of jobs** available in the economy that the claimant could perform with her RFC." *Id.* (emphasis added); *Cunningham*, 360 Fed.Appx. at 615 (confining the relevant analysis to "whether substantial evidence supports the conclusion that the[ at-issue] jobs exist in substantial numbers"); *see also Holleran v. Colvin*, No. 13-193-GFVT, 2015 WL 1432966, at *8-9 (E.D. Ky. Mar. 27, 2015) (similarly distinguishing). Plainly, focused on the social function components of the representative jobs, Kidd raises no issue in this court concerning the discrete job numerosity inquiry.

17

> Third, many courts have criticized *Cunningham*'s singular status. *See, e.g.*, *Morris v. Comm'r of Soc. Sec.*, No. 1:16-cv-433, 2017 WL 1159809, at *11 (W.D. Mich. Mar. 29, 2017) (dissing *Cunningham* as a lone outlier—"No subsequent Sixth Circuit decision has . . . questioned the 'reliability' of VE testimony in a similar fashion."); *Belew v. Astrue*, No. 2:11-107-DCR, 2012 WL 3027114, at *9 n.5 (E.D. Ky. July 24, 2012) (same: "*Cunningham* is an unpublished decision by a divided panel. No subsequent Sixth Circuit opinion has questioned the reliability of VE testimony on the grounds of his or her reliance on the DOT." (citing cases)); *Cunningham*, 360 Fed.Appx. at 616-17 (Ryan, J., dissenting) (panning the panel majority for "locat[ing] evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness, and [for] hold[ing] that the expert's failure to consider this court's more favored data effectively nullified the 'reliability' of the expert's opinion, rendering the entire body of otherwise 'substantial evidence' suddenly insubstantial"); *see also Gallo v. Comm'r of Soc. Sec.*, 449 Fed.Appx. 648, 650 (9th Cir. 2011) (holding that reliance on VE's DOT-based testimony, though it contained "a seemingly antiquated reference to typewriters," was proper: "VE testimony may become unreliable on account of a conflict with the DOT . . . but not on account of its compliance with the DOT."); *Carrier v. Astrue*, No. 10-67-GWU, 2011 WL 2694659, at *5 (E.D. Ky. July 12, 2011) (rejecting an argument "that the DOT is an obsolete resource"); *Ragland v. Berryhill*, No. 17-C-730, 2018 WL 1757656, at *11 & *11 nn.8-9 (E.D. Wis. Apr. 12, 2018) (recently rejecting a claimant's O*NET-based argument, involving the same counsel as this case); *Moffit v. Berryhill*, No. 17-4015-JWL, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (same); *James v. Colvin*, No. 16-470-EWD, 2017 WL 4185479, at *11-12 (M.D. La. Sept. 21, 2017) (same).
>
> The Court adds the observation, while continuing to echo the many already-levied criticisms, that *Cunningham* cited **no legal authority** for its broad musings, instead principally relying on the panel majority's "common sense" to reach its conclusions. *See* 360 Fed.Appx. at 615. This approach, divorced from prior and subsequent Sixth Circuit case law, departs from typically deferential, substantial-evidence review and empties the force from much of *Cunningham*'s generalized commentary. *See also, e.g., Moffit*, 2018 WL 276770, at *6 (noting the "first finding" of the SSA-commissioned Occupational Information Development Advisory Panel that "the O*NET in its current form is not suitable for disability adjudication"); *see also* Occupational Info. Dev. Advisory Panel, Findings Report (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE% 20FINAL--Findings% 20Report% 20OIDAP% 20062810.pdf, at 3, 10-11.

2018 WL 3040894 at *7–8 (emphasis in original).

The court in *Kidd* emphasized that it was not concluding that reliance on O*NET is precluded in all instances, "but rather that the SSA still considers the DOT reliable, that there is (at least) debate concerning [the utility of O*NET], and that an ALJ has considerable discretion

18

when assessing VE testimony (and its underlying bases) for reliability and currency. 2018 WL 3040894 at *9 (citations omitted). The Court adopts this reasoning here.

Regardless, the question is whether substantial evidence supports the ALJ's Step 5 decision in the instant case. Here, the Court finds that substantial evidence supports the ALJ's Step 5 decision. Even is substantial evidence supported a contrary conclusion, the Court will uphold an administrative decision that is supported by substantial evidence. *Jones*, 336 F.3d at 475.

The ALJ considered Plaintiff's extensive post-hearing objections to the VE's testimony. (R. at 12–14.) Based on this record, the Court concludes that Plaintiff received a full and fair hearing. *See Burdine v. Comm'r of Soc. Sec.*, No. 1:17-cv-1133, 2019 WL 1349486, at *4 (W.D. Mich. March 26, 2019) (holding that ALJ considered plaintiff's post-hearing objections and that based on the record plaintiff received a full and fair hearing) (citations omitted). Plaintiff's contention of error is, therefore, **OVERRULED**.

### VII. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**

**Date: August 26, 2019**　　　　　　　　　　　　*/s/ Elizabeth A. Preston Deavers*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　**ELIZABETH A. PRESTON DEAVERS**
　　　　　　　　　　　　　　　　　　　　　　　　**CHIEF UNITED STATES MAGISTRATE JUDGE**